**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MICHAEL D.J. EISENBERG,

             Plaintiff,

    v.

HAMILTON FOX, III, *et al.*,

             Defendants.

Civil Action No. 26-cv-01435-RCL

## MEMORANDUM OPINION

Pro se plaintiff Michael D.J. Eisenberg, Esq., filed this lawsuit advancing constitutional and other legal challenges to actions that officials at the District of Columbia Office of Disciplinary Counsel and the District of Columbia Court of Appeals Board on Professional Responsibility took while he was petitioning for a negotiated discipline regarding attorney misconduct allegations. He also challenges actions that they might take during a disciplinary hearing scheduled to take place this month before a Hearing Committee acting under the auspices of the Board on Professional Responsibility.

The gist of Eisenberg's dispute revolves around the question of whether Disciplinary Counsel may lawfully impeach an attorney using admissions contained in a petition for a negotiated discipline that was executed and filed—but that Disciplinary Counsel unilaterally withdrew before a Hearing Committee could consider and formally reject it. As will be explained, however, the abstention doctrine recognized in *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny preclude the Court from exercising federal jurisdiction to address this

question. The Court therefore must dismiss Eisenberg's Amended Complaint [ECF No. 6] without reaching the merits of his allegations.

## BACKGROUND

### I.    The District of Columbia Court of Appeals Disciplinary Process

An exhaustive recitation of the District of Columbia Court of Appeals process for disciplining attorneys is not necessary to grasp the Court's decision to abstain from exercising federal jurisdiction. Suffice it to say that the D.C. Court of Appeals has "exclusive jurisdiction to oversee both the processes and the outcomes of disciplinary proceedings." *Klayman v. Bd. on Pro. Resp.*, 333 A.3d 1157, 1160 (D.C. 2025). And it is vested with the authority to "make such rules as it deems proper respecting the examination, qualification, and admission of persons to membership in its bar, and their censure, suspension, and expulsion." D.C. Code § 11-2501(a).

Consistent with this authority, the D.C. Court of Appeals issues rules to govern attorney conduct, the most relevant of which is Rule XI. Rule XI stakes out the D.C. Court of Appeals' disciplinary jurisdiction and extends that jurisdiction to the Board on Professional Responsibility. D.C. Bar R. XI § 1.

In turn, the Board on Professional Responsibility is also empowered to adopt rules, which it does in the form of "Board Rules" promulgated in accordance with Rule XI. The Board Rules set forth comprehensive guidelines and procedures to govern the entire disciplinary-process lifecycle. *See generally* D.C. Ct. of Appeals Bd. on Pro. Resp. Board Rules (1983) (amended 2025),[1] https://www. dcbar.org/getmedia/c88f93a9-268d-458b- a071-13b3f6a140e0/2025-Amended-Board-Rules-Clean.

---

[1]    Chapter 1 of the Board Rules states that the rules "shall be known and cited as the 'Board Rules,'" Board Rules 1.1, which is a convention that the Court will honor rather than using the standard abbreviations recommended by citation systems that the Court ordinarily follows.

Together, Rule XI and the Board Rules serve as the backbone for a multi-tiered system that involves, among other things, screening complaints alleging attorney misconduct, investigating them, conducting formal fact finding, and determining dispositions. *See* D.C. Bar R. XI; Board Rules 2.1–18.5. At the outset, the disciplinary process appears to begin with a Disciplinary Counsel performing an initial screening to determine whether to publicly docket a complaint and then proceeding to investigate the complaint. *See* Board Rules 2.4, 2.9. Throughout the investigation, and even after a Disciplinary Counsel files a petition to formally charge an attorney with misconduct, the respondent attorney is entitled to discovery and access to "all material in the files of Disciplinary Counsel pertaining to the pending charges that are neither privileged nor the work product of the Office of Disciplinary Counsel." Board Rules 3.1.

In terms of next steps, the Disciplinary Counsel may recommend dispositions that are evaluated by a Hearing Committee member who reviews, approves, or modifies the recommendations. *See* Board Rules 2.12. If an attorney disputes the Disciplinary Counsel's recommendations, formal proceedings may be initiated via Disciplinary Counsel filing a "petition" before a full Hearing Committee. Board Rules 7.1. The Hearing Committee will then conduct formal fact-finding and produce a report and recommendation that is submitted to the Board on Professional Responsibility for review. Board Rules 7.3, 11.2–11.9, 12.2, 13.1–13.8. Further review occurs if an attorney objects to the Board on Professional Responsibility's orders or written inquiries, in which case "review of the order or inquiry by the Court [of Appeals] is available after all the proceedings before the Board are concluded and the Board has recommended or imposed a sanction." Board Rules 13.9.

Built into this multi-tiered system is a process by which an attorney who is being investigated by Disciplinary Counsel—or who is the subject of a petition pending before a

3

Hearing Committee—may negotiate a proposed disposition of the charges and sanction so long as the Hearing Committee has not yet filed a report and recommendation to the Board on Professional Responsibility. Board Rules 17.1. Negotiated discipline is pursued in the form of a "petition for negotiated discipline" that a Disciplinary Counsel prepares. Board Rules 17.3(a). It contains, among other things, a stipulation of facts and charges, identifies the Rules of Professional Conduct the attorney violated, states any promises or inducements that Disciplinary Counsel made to the attorney, and identifies an agreed upon sanction along with "any circumstances in . . . mitigation of sanction that the parties agree should be considered and any other factors that are relevant to whether the proposed sanction is justified." Board Rules 17.3(a).

An affidavit that the respondent attorney submits must accompany a petition for negotiated discipline. Board Rules 17.3(b). This affidavit must state certain enumerated averments, including that the attorney is entering into the negotiated discipline freely and voluntarily and is not being subjected to coercion or duress. *Id.* The affidavit also must state that the attorney "acknowledges the truth of the material facts upon which the misconduct stipulated to in the petition for negotiated discipline is predicated." *Id.* That said, the affidavit "may recite . . . any other facts in mitigation that support the agreed upon sanction." *Id.*

Upon receiving a petition for negotiated discipline, a Hearing Committee must hold a "limited hearing." Board Rules 17.4(a) (stating that "[a] Hearing Committee receiving a proposed negotiated discipline shall hold a limited hearing"). At any time before the limited hearing concludes, however, either the Disciplinary Counsel or the respondent attorney may withdraw from the negotiated discipline "for any reason or for no reason." Board Rules 17.7. If the Hearing Committee "rejects" the negotiated discipline, the petition, the accompanying

4

affidavit, and the limited hearing evidence may be used to impeach an attorney in a later contested discipline proceeding involving the same misconduct charges, but they may not be used for any other evidentiary purpose. Board Rules 17.10.

This negotiated-discipline process—and the defendants' conduct during the process—appears to have been the catalyst for Eisenberg's lawsuit.

## II.    Eisenberg's Amended Complaint

Eisenberg's Amended Complaint[2] states that he is a District of Columbia Bar member who is the respondent in a matter being investigated and prosecuted by Disciplinary Counsel. Am. Compl. ¶¶ 21, 22, 46 [ECF No. 6]. He further states that he twice executed petitions for a negotiated discipline that were filed (presumably by Disciplinary Counsel) before a Hearing Committee pursuant to Board Rules 17.4. Am. Compl. ¶ 50.

The first petition for a negotiated discipline reportedly was filed on or about October 9, 2024, but did "not go forward." Am. Compl. ¶¶ 50–51. And the second petition was filed a little over a year later on or about November 4, 2025, but it was "deemed unacceptable." Am. Compl. ¶¶ 52, 54. Thus, neither filed petition proceeded to the "limited hearing" that Eisenberg asserts Board Rules 17.4(a) mandates that the Hearing Committee hold upon receiving such a petition. Am. Compl. ¶¶ 32, 51, 52.

Notwithstanding the two forestalled petition attempts, Eisenberg indicates that the parties continued negotiating and they "reached yet a third accord on a further amended petition." Am.

---

[2]    Eisenberg initiated his lawsuit by filing a Complaint about three months ago on April 28, 2026 [ECF No. 1], which prompted the defendants to file a motion to dismiss. To avoid dismissal, Eisenberg submitted an Amended Complaint on June 3, 2026 [ECF No. 6] pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, Pl.'s Mot. for Leave to File Verified Second Am. Compl. 1 n.1 [ECF No. 16]. He has now moved to file a second amended complaint with the Court's leave in accordance with Rule 15(a)(1)(B). *Id.* That motion remains pending before the Court.

Compl. ¶ 55. In the end, though, Eisenberg did not sign this petition after Disciplinary Counsel instructed him that he "could not present testimony or other matters at the limited hearing beyond the content of the petition and affidavit and would also need to be prepared to admit, on the record, that all prior disciplinary processes had been fair[.]" Am. Compl. ¶¶ 55, 57.

Eisenberg states that he "was prepared to agree under oath" at a limited hearing that he entered into the settlement voluntarily—"but never that it was a fair process." Am. Compl. ¶ 56. Indeed, Eisenberg alleges that the process was unfair, "marked by unwarranted and extraordinary prejudicial delays," Am Compl. ¶ 55, and otherwise was riddled with pseudo-adjudicative and ex parte exchanges between Disciplinary Counsel and the Hearing Committee that derailed the filed petitions without the benefit of transcripts, a public hearing, or formal rejection proceedings, Am. Compl. ¶¶ 50–54, 69.

Eisenberg takes particular issue with the negotiated-discipline process on the ground that Disciplinary Counsel induced him to "reluctantly" admit to allegations and thereby secured "contested-hearing advantages." Am. Compl. ¶ 60. Eisenberg insists that he was willing to make admissions only because conflicting evidence existed and he relied on "inducements and promises" that Disciplinary Counsel provided during negotiations. Am. Compl. ¶ 60. Meanwhile, Disciplinary Counsel allegedly reserved the right to use admissions contained in the petitions and their accompanying affidavits as impeachment evidence during this month's scheduled disciplinary hearing. Am. Compl. ¶ 72. And Disciplinary Counsel reportedly has refused to disclaim such use. Am. Compl. ¶ 73.

Eisenberg therefore filed this lawsuit to secure judicial declarations that (1) Board Rules 17.10's reference to a petition being "rejected" does not include "informal, off-record, respondent-excluded pre-hearing derailment" and (2) the defendants "may not treat informal

derailment of a filed compromise petition as the functional equivalent of formal rejection" such that Disciplinary Counsel may use a negotiated discipline petition, any associated affidavit, or any admissions contained in such documents "for impeachment or other adverse evidentiary use in any later contested evidentiary hearing." Am. Compl. ¶ 101(a)–(b). He also seeks an injunction prohibiting the defendants from using such documents or admissions for impeachment or adverse evidentiary use in a later contested hearing, as well as class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure, among other requested relief. Am. Compl. ¶ 101(c)–(f).

The defendants retort by characterizing Eisenberg's Amended Complaint as "essentially a motion in limine" that serves as a misplaced attempt to prevent Disciplinary Counsel "from using the admissions contained in his negotiated discipline petitions and affidavits." Defs.' Mem. of L. In Supp. of Their Mot. to Dismiss the Am. Compl. 1–2 [ECF No. 8-1]. They contend that dismissal is warranted not only on this ground but also because the D.C. Court of Appeals has exclusive jurisdiction to oversee the attorney disciplinary process and federal courts must apply the abstention doctrine to dismiss lawsuits "where an attorney brings a federal court lawsuit alleging that his constitutional rights are being violated by a pending disciplinary proceeding" but "can raise his challenges in the disciplinary proceeding, and has a right to appellate review, where he can raise them again." *Id.* at 2.

### LEGAL STANDARDS

Generally, "federal courts are obliged to decide cases within the scope of federal jurisdiction." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). In *Younger v. Harris*, however, the United States Supreme Court "recognized a far-from-novel exception to this general rule." *Id.* at 77 (internal quotation marks omitted). There, the Supreme Court held that federal courts must abstain from enjoining parallel and pending state criminal proceedings in

fealty to principles of federalism, equity jurisdiction, and comity. *Id.* And the Supreme Court later announced another principle favoring abstention—"to avoid unwarranted determination of federal constitutional questions." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987) (cautioning that, "[w]hen federal courts interpret state statutes in a way that raises federal constitutional questions, a constitutional determination is predicated on a reading of the statute that is not binding on state courts and may be discredited at any time—thus essentially rendering the federal-court decision advisory and the litigation underlying it meaningless" (internal quotation marks omitted)).

These principles, in whole or in part, ultimately animated the Supreme Court to extend *Younger* abstention "beyond state criminal prosecutions" and apply it to two additional categories of proceedings:  (1) civil enforcement proceedings; and (2) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367–68 (1989) (internal citations omitted).  The second category of proceedings is implicated by the allegations and relief sought in Eisenberg's Amended Complaint.

It is now well established that "there are some classes of cases in which the withholding of authorized equitable relief because of undue interference with state proceedings is the normal thing to do." *Id.* at 359 (quoting *Younger*, 401 U.S. at 45).  In this regard, the Supreme Court "repeatedly has recognized that the States have important interests in administering certain aspects of their judicial systems." *Pennzoil Co.*, 481 U.S. at 12–13.  One aspect of judicial systems that involves such important interests is "maintaining and assuring the professional conduct of the attorneys [a State] licenses." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 434 (1982).  "The judiciary as well as the public is dependent upon

8

professionally ethical conduct of attorneys and thus has a significant interest in assuring and maintaining high standards of conduct of attorneys engaged in practice." *Id.*

When an important State interest such as attorney conduct and discipline is the subject of a pending State judicial proceeding but also becomes ensnared in a parallel federal court proceeding, "a federal court should abstain unless state law clearly bars the interposition of . . . constitutional claims." *Id.* at 432 (internal quotation marks omitted). Thus, "[s]o long as the constitutional claims of respondents can be determined in the state proceedings and so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." *Id.* at 435.

## DISCUSSION

With the foregoing legal standards in mind, the paramount question for the Court is whether Eisenberg's constitutional claims can be determined during the District of Columbia Court of Appeals attorney discipline process. The Board on Professional Responsibility's Board Rules contemplate that they can.

The Board Rules anticipate that respondent attorneys may submit motions subject to the requirement that motions comply with Rule 19.8, which mainly sets forth technical filing requirements. *See generally* Board Rules 7.13, 13.1, 19.8. Notably, the Board Rules state that motions may be "directed to the manner in which the hearing is to be conducted," Board Rules 7.16(a), which is broad enough to include a constitutional challenge to whether and how an attorney may be impeached during a hearing.

To be sure, Eisenberg indicates that he did "raise[] the federal due process issue regarding the use of negotiated-discipline admissions" but it was never addressed before the "compromise settlement docket was closed." Am. Compl. ¶ 19. As best the Court can tell,

9

though, there is nothing in the Board Rules that prevents Eisenberg from re-raising this constitutional issue by motion during subsequent formal misconduct proceedings notwithstanding that it was ignored during an unsuccessful negotiated-discipline proceeding. Board Rules 7.13, which governs motions, contains no such expressed bar. That rule also contains no expressed limit on the scope of issues that may be raised by motion.

The Board Rules also reflect that the Chair of a Hearing Committee may conduct a prehearing conference with Disciplinary Counsel and a respondent attorney to dispose of motions. Board Rules 7.20. One expressed purpose for conducting such a conference is to "clarify the issues," which arguably might include any constitutional issues that a respondent attorney raises by motion or otherwise.

To reiterate, "abstention is appropriate unless state law *clearly bars* the interposition of the constitutional claims." *Moore v. Sims*, 442 U.S. 415, 425–26 (1979) (emphasis added). As long as Eisenberg has an "opportunity" to present his federal claims during the disciplinary proceedings, however, this Court's exercise of equitable powers is inappropriate. *Id.* at 425.

Because Eisenberg points to no Board Rule or other District of Columbia law that prohibits him from raising constitutional claims during attorney disciplinary proceedings, and the Amended Complaint otherwise fails to establish that there is no opportunity to present constitutional claims during such proceedings, the Court is left to evaluate whether it should forego abstaining based on a showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate. *See Middlesex Cnty. Ethics Comm.*, 457 U.S. at 432. This Court has previously cautioned, though, that "Federal courts require a very strong factual showing of extraordinary circumstances when abstention is otherwise appropriate." *Lawrence v. Carlin*, 541 F. Supp. 2d 189, 194 (D.D.C. 2008), *aff'd*, No. 08-7104,

10

2009 WL 1201770 (D.C. Cir. Feb. 23, 2009). No such strong factual showing has surfaced at this juncture.

Although Eisenberg's pending Emergency Motion for Preliminary Injunction or Stay [ECF No. 10] is accompanied by one declaration and one affidavit that contain statements highlighting flaws in the disciplinary process—such as lengthy delays and the attested failure to adequately account what a witness perceived to be strong mitigating circumstances—the matters discussed in these documents reflect failings and fraught negotiation disagreements that do not strike the Court as rising to the level of being "extraordinary" for the purpose of negating abstention, even assuming for the sake of argument that the Court can properly consider them during this analysis. "[W]hatever else is required, such circumstances must be 'extraordinary' in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation." *Moore*, 442 U.S. at 433.

Given that Eisenberg has not yet been subjected to the impeachment by admission that he seeks to remedy,[3] there is no meaningful evidence that he has pursued his constitutional claims during the post-negotiated-discipline process, any allegations that can be characterized as supporting a claim of bad faith are not extraordinary enough to negate abstention at this stage, and he has not otherwise cited any District of Columbia of law that prevents him from raising his federal claims during the formal disciplinary process, the Court is constrained to abstain from exercising its equitable powers in this case.

---

[3]    The Court also questions whether Eisenberg's Amended Complaint identifies an actual case or controversy involving an injury in fact given that he has not yet been impeached using admissions that were made during the negotiated-discipline process that he challenges. *Moore*, 442 U.S. at 429.

As a postscript, however, the Court admits to sympathizing with Eisenberg's concern about whether it is legally sound to interpret the Board Rules to permit a Disciplinary Counsel to impeach an attorney using admissions made to secure a negotiated-discipline petition that was never actually "rejected" as expressed in Board Rules 17.10 and, instead, was simply "withdrawn." Again, though, because the Court must abstain, it takes no position on the merits of any of Eisenberg's Amended Complaint claims.

## CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss the Amended Complaint [ECF No. 8]. An appropriate order will be entered in the public docket.

August 5, 2026

ROYCE C. LAMBERTH
United States District Judge

12